

EXHIBIT

A

**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**Jerald.E.Gilbert@tn.gov**

January 5, 2017

Minnesota Life Insurance Company                     Certified Mail
800 S. Gay Street, Ste 2021, % C T Corp.             Return Receipt Requested
Knoxville, TN  37929-9710                             7016 0750 0000 2778 3458
NAIC # 66168                                          Cashier # 29913

Re:    Estate Of Rose Marie Reasoner   V.   Minnesota Life Insurance Company

       Docket # 16-0866

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of
Commerce and Insurance was served January 5, 2017, on your behalf in connection with the
above-styled proceeding.  Documentation relating to the subject is herein enclosed.

Jerald E. Gilbert
Designated Agent
Service of Process

Enclosures

cc: Chancery Court Clerk
    Hamilton County
    201 East Seventh Street, Rm 300
    Chattanooga, Tn  37402


ORIGINAL
12-29-16
DATE
TO BE *RETURNED TO CLE*
*WHEN SERVICE IS PERFECTED*

# State of Tennessee
## IN THE CHANCERY COURT FOR HAMILTON COUNTY

ESTATE OF ROSE MARIE REASONOVER,
SCHAWNA TANNER, Executrix,

### PLAINTIFF

VS.

DOCKET NO. 16-0866

MINNESOTA LIFE INSURANCE COMPANY,
SECURIAN FINANCIAL NETWORK, INC.,
AND REGIONS BANK,

### DEFENDANTS

# SUMMONS

TO DEFENDANT: MINNESOTA LIFE INSURANCE COMPANY, via Tennessee Department of Commerce and Insurance WHOSE ADDRESS IS 500 James Robertson Pkwy #5, Nashville, TN 37245

OTHER SERVICE INFORMATION _____

You are summoned and required to Answer and make defense to a Complaint herewith served upon you. Your Answer to the Complaint must be filed and served upon plaintiff's attorney on or before thirty (30) days after service of this Summons and Complaint upon you, exclusive of the day of service. Your Answer must be filed in the OFFICE OF THE CLERK & MASTER, 625 Georgia Avenue, Room 300 Courthouse, Chattanooga, Tennessee 37402. You are also required to serve a copy of your Answer upon the plaintiff's attorney, or the *pro se* plaintiff as set out below. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

ISSUED & TESTED this 30 day of December , 2016.

ROBIN L. MILLER, CLERK & MASTER

By: Wendi Sams

DEPUTY CLERK & MASTER

| | |
|---|---|
| W. Gerald Tidwell, Jr.<br>Plaintiff Attorney<br>or Plaintiff if no attorney (*pro se*) | BPR#10136 |
| 736 Market Street, Suite 1550<br>Chattanooga, Tennessee 37402 | |
| 423-602-7511 | 423-602-7515 |
| Tel. NO. | Fax NO. |

**NOTICE TO DEFENDANT(S)**
Tennessee Code Annotated § 26-2-103 provides a $4,000.00 personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk & Master. The list may be filed at any time and may be changed by you thereafter as necessary; however unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you, would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

2017 JAN 30  AM 9: 24

FILED
HAMILTON CO CLERK & MASTER

# SUMMONS RETURN

I received this summons on _____. I certify and return that on _____, I

(Date)                                    (Date)

☐ served this summons and a complaint on defendant, _____

(Printed Name of Defendant)

in the following manner:

_____

_____

_____

☐ failed to serve this summons within thirty (30) days after its issuance because:

_____

_____

_____

_____        _____

Process Server Name (Printed)                    Process Server Signature

_____

Address

_____

_____

[Form 114, Rev 2008.01.22]



ORIGINAL
12-29-16
DATE
TO BE *RETURNED TO CLERK*
WHEN SERVICE IS PERFECTED!

# State of Tennessee
## IN THE CHANCERY COURT FOR HAMILTON COUNTY

**ESTATE OF ROSE MARIE REASONOVER,**
**SCHAWNA TANNER, Executrix,**

**PLAINTIFF**

VS.

DOCKET NO. 16-0366

**MINNESOTA LIFE INSURANCE COMPANY,**
**SECURIAN FINANCIAL NETWORK, INC.,**
**AND REGIONS BANK,**

**DEFENDANTS**

*ISSUE COPY*

## SUMMONS

TO DEFENDANT: SECURIAN FINANCIAL NETWORK, INC., via **Tennessee Department of Commerce and**

**Insurance** WHOSE ADDRESS IS **500 James Robertson Pkwy #5, Nashville, TN 37245**

OTHER SERVICE INFORMATION _____

You are summoned and required to Answer and make defense to a Complaint herewith served upon you. Your Answer to the Complaint must be filed and served upon plaintiff's attorney on or before thirty (30) days after service of this Summons and Complaint upon you, exclusive of the day of service. Your Answer must be filed in the OFFICE OF THE CLERK & MASTER, 625 Georgia Avenue, Room 300 Courthouse, Chattanooga, Tennessee 37402. You are also required to serve a copy of your Answer upon the plaintiff's attorney, or the *pro se* plaintiff as set out below. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

**ISSUED & TESTED** this **30** day of **December**, 20**16**.

**ROBIN L. MILLER, CLERK & MASTER**

By: _____

**DEPUTY CLERK & MASTER**

| | |
|---|---|
| W. Gerald Tidwell, Jr.<br>Plaintiff Attorney<br>or Plaintiff if no attorney (*pro se*) | BPR#10136 |
| **736 Market Street, Suite 1550**<br>**Chattanooga, Tennessee 37402** | |
| 423-602-7511 | 423-602-7515 |
| Tel. N0. | Fax N0. |

**NOTICE TO DEFENDANT(S)**

Tennessee Code Annotated § 26-2-103 provides a $4,000.00 personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk & Master. The list may be filed at any time and may be changed by you thereafter as necessary; however unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you, would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a



**CORPORATION SERVICE COMPANY®**

# Notice of Service of Process

| | |
|---|---|
| Primary Contact: | Winn C. Shannon- Mail Code ALBH 12201B<br>Regions Financial Corporation<br>1900 Fifth Avenue North<br>Floor 22 Regions Center<br>Birmingham, AL 35203 |
| Electronic copy provided to: | Julie Boyd |

| | |
|---|---|
| Entity: | Regions Bank<br>Entity ID Number 2334106 |
| Entity Served: | Regions Bank |
| Title of Action: | Estate of Rose Marie Reasonover Schawna Tanner, Executrix vs. Minnesota Life Insurance Company |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Wrongful Death |
| Court/Agency: | Hamilton County Chancery Court, Tennessee |
| Case/Reference No: | 16-0866 |
| Jurisdiction Served: | Tennessee |
| Date Served on CSC: | 01/09/2017 |
| Answer or Appearance Due: | 30 Days |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Sender Information: | W. Gerald Tidwell, Jr<br>423-602-7511 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action

To avoid potential delay, please do not send your response to CSC
2711 Centerville Road Wilmington, DE 19808 (888) 690-2882 | sop@cscglobal.com

# State of Tennessee

## IN THE CHANCERY COURT FOR HAMILTON COUNTY

ESTATE OF ROSE MARIE REASONOVER,
SCHAWNA TANNER, Executrix,

### PLAINTIFF

VS.

DOCKET NO. 16-0866

MINNESOTA LIFE INSURANCE COMPANY,
SECURIAN FINANCIAL NETWORK, INC.,
AND REGIONS BANK,

### DEFENDANTS

## SUMMONS

TO DEFENDANT: REGIONS BANK, WHOSE ADDRESS IS 2908 Poston Avenue, Nashville, TN 37203

OTHER SERVICE INFORMATION _____

---

You are summoned and required to Answer and make defense to a Complaint herewith served upon you. Your Answer to the Complaint must be filed and served upon plaintiff's attorney on or before thirty (30) days after service of this Summons and Complaint upon you, exclusive of the day of service. Your Answer must be filed in the OFFICE OF THE CLERK & MASTER, 625 Georgia Avenue, Room 300 Courthouse, Chattanooga, Tennessee 37402. You are also required to serve a copy of your Answer upon the plaintiff's attorney, or the *pro se* plaintiff as set out below. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

ISSUED & TESTED this 30 day of December , 20 16 .

ROBIN L. MILLER, CLERK & MASTER

By: _Wilma Sanders_

DEPUTY CLERK & MASTER

W. Gerald Tidwell, Jr.
Plaintiff Attorney
or Plaintiff if no attorney (*pro se*)                    BPR#10136

736 Market Street, Suite 1550
Chattanooga, Tennessee 37402

423-602-7511                                              423-602-7515

Tel. NO.                                                  Fax NO.

### NOTICE TO DEFENDANT(S)

Tennessee Code Annotated § 26-2-103 provides a $4,000.00 personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk & Master. The list may be filed at any time and may be changed by you thereafter as necessary; however unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you, would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

## SUMMONS RETURN

I received this summons on _____. I certify and return that on _____, I

☐ served this summons and a complaint on defendant, _____
(Date)             (Date)

(Printed Name of Defendant)

in the following manner:

_____
_____
_____

☐ failed to serve this summons within thirty (30) days after its issuance because:

_____
_____
_____

_____  _____
Process Server Name (Printed)     Process Server Signature

_____
Address
_____
_____

[Form 114, Rev 2008.01.22]

ESTATE OF ROSE MARIE REASONOVER     \*
SCHAWNA TANNER, Executrix,     \*
Plaintiff     \*
    \*
Vs.     \*
    \*
MINNESOTA LIFE INSURANCE COMPANY,     \*
SECURIAN FINANCIAL NETWORK, INC.     \*
AND REGIONS BANK     \*
Defendants     \*

Docket Number: 16-0866

Division: _____

## COMPLAINT

Schawna Tanner, Executrix of the Estate of Rose Marie Reasonover, ("Plaintiff") states her causes of action against Minnesota Life Insurance Company, Securian Financial Network, Inc., and Regions Bank as follows:

### THE PARTIES

(1)    Plaintiff is a resident of the State of Tennessee;

(2)    Defendants, Minnesota Life Insurance Company and Securian Financial Network Inc. are insurance companies, doing business in the State of Tennessee, specifically in Hamilton County.

(3)    Defendant, Regions Bank, is a financial institution licensed to do business in the State of Tennessee, with its deposits insured by the Federal Depository and with branches in Hamilton County, Tennessee.

### JURISDICTION AND VENUE

(4)    The relevant actions and events that form the basis of Plaintiff's claim occurred in Hamilton County, Tennessee; Defendants sell their insurance policies in Hamilton County,

Tennessee; and therefore are subject to the jurisdiction of this Court, which has jurisdiction of this case. For these same reasons, venue is properly laid in this Court.

## RELEVANT FACTS

(5)     Rose Marie Reasonover (hereinafter Ms. Reasonover), Plaintiff's deceased mother, through Regions Bank, contracted with Minnesota Life Insurance Company, and by extension, its parent company Securian Financial Network, Inc., (hereinafter "Securian"), to participate in a Group Nonparticipating Accidental Death and Dismemberment policy (AD&D);

(6)     Such policy was issued on, or about, January 1, 2014; thereafter premiums were withdrawn monthly from Ms. Reasonover's Regions Bank checking account;

(7)     The death benefit of this policy was fifty-thousand dollars ($50,000) up until the insured's age seventy (70), at which point, the face amount dropped to twenty-five thousand dollars ($25,000);

(8)     At the behest of Regions Bank employees or representatives, and/or employees of Minnesota Life and/or its parent company, Securian, Ms. Reasonover acquiesced in signing up for this policy, at which time, Ms. Reasonover was already age seventy (70);

(9)     Neither Regions Bank, nor Minnesota Life, nor their employees or representatives, explained to Ms. Reasonover that she would be paying premiums for a fifty-thousand dollar ($50,000) policy, but would, at best, receive only a twenty-five thousand dollar ($25,000) death benefit;

(10)     Ms. Reasonover's premiums were not reduced to reflect the age-reduced death benefit of the policy, therefore, Ms. Reasonover paid more in premiums than she would have

paid had the premiums been properly reduced based on her age and the corresponding age-reduced death benefit of the policy;

(11)    On January 19, 2016, Ms. Reasonover died;

(12)    An autopsy performed February 16, 2016, found non-fatal levels of Fexofenadine, Oxycodone, and Pseudoephedrine in Ms. Reasonover's system, but such medications were not determined to be the cause of her death, which the Hamilton County Medical Examiner, Dr. James K. Metcalfe, ruled as "accidental," noting end-stage renal disease, hypertension, and Diabetes Mellitus as "contributing factors;"

(13)    The Executrix of her mother's estate, Ms. Tanner, promptly filed a claim with Minnesota Life, and by extension, its parent company, Securian, for proceeds of the AD&D policy;

(14)    Minnesota Life, and by extension, its parent company, Securian, refused to pay the benefits under such policy, alleging that Ms. Reasonover "...took the drugs of her own volition which caused her death;"

(15)    On, or about, September 12, 2016, Plaintiff sent a *Demand Letter* to Minnesota Life, and by extension, its parent company, Securian, demanding payment of amounts due under the policy;

(16)    By letter dated September 27, 2016, Minnesota Life, and by extension, its parent company, Securian, refused to honor such demand, again asserting that the cause of Ms. Reasonover's death was outside the terms of the policy.

### COUNT I: BREACH OF CONTRACT – MINNESOTA LIFE AND SECURIAN

(17)     Minnesota Life, and by extension its parent company, Securian, breached the contract into which it entered with Ms. Reasonover, on, or about January 1, 2014, and for which it collected premiums from the issue date of the contract until Ms. Reasonover's accidental death;

(18)     Despite having been properly remunerated, Minnesota Life, and by extension its parent company, Securian, breached its obligation under the policy to pay benefits to the named beneficiary under the policy in the event of Ms. Reasonover's accidental death;

### COUNT II: BAD FAITH REFUSAL TO PAY – MINNESOTA LIFE AND SECURIAN

(19)     Pursuant to *Tenn. Code Ann.* § 56-7-105, foreign and domestic insurance companies doing business in the State of Tennessee who refuse to timely pay benefits due under a policy within sixty (60) days of a demand letter, are responsible for amounts due under the policy, plus an additional twenty-five percent (25%), where such refusal to pay was made in bad faith, and the claimant incurred additional expense, loss, or injury as a result of such bad faith refusal to pay;

(20)     As a result of Minnesota Life's, and by extension its parent company, Securian Financial Network, Inc's, bad faith refusal to pay the policy proceeds, Ms. Reasonover's estate has incurred additional expenses, including, but not limited to attorney's fees to collect the amounts due under the policy, as well as premium payments for a fifty-thousand dollar ($50,000) policy, when in fact, the policy was at all times only a twenty-five thousand dollar ($25,000) policy;

## COUNT III: MISREPRESENTATION – MINNESOTA LIFE, SECURIAN, AND REGIONS BANK

(21)    Neither Minnesota Life, and by extension its parent company, Securian, nor Regions Bank, nor the employees or representatives of any of these entities, made any effort to correctly represent to Ms. Reasonover that she would be paying premiums for a fifty-thousand dollar ($50,000) policy, but only receiving the benefit of a twenty-five thousand dollar ($25,000) policy, thereby misrepresenting to Ms. Reasonover the value of the policy she was purchasing.

## COUNT IV: MISREPRESENTATION – MINNESOTA LIFE AND SECURIAN

(22)    Minnesota Life, and by extension its parent company, Securian, has repeatedly misrepresented to Plaintiff that Ms. Reasonover's death was the result of the medications she took, despite the fact that the Medical Examiner found non-fatal levels of medications in Ms. Reasonover's blood, and ruled the cause of death as "accidental;"

(23)    Alternatively, Minnesota Life, and by extension its parent company, Securian, has alleged that Ms. Reasonover intentionally caused her own death by the taking of non-fatal levels of medications;

(24)    However, Defendant has no evidence of such intent, and Tennessee law provides for a presumption against a finding of intentional death or suicide.

## COUNT V: BREACH OF FIDUCIARY DUTY – MINNESOTA LIFE AND SECURIAN

(25)    Both Minnesota Life and Securian are under a fiduciary obligation, imposed by both state and federal law, requiring that agents ensure that the insurance and securities products they sell are appropriate for the needs and financial situation of their clients;

(26)     Minnesota Life and Securian breached their respective fiduciary duties by failing to have a properly licensed insurance and/or securities agent meet with Ms. Reasonover to review and understand her financial situation and needs, and assist her in ascertaining what types of financial or insurance products would best meet her needs.

### COUNT VI: CIVIL CONSPIRACY – MINNESOTA LIFE, SECUIRIAN, AND REGIONS BANK

(27)     All three (3) entities engaged in a civil conspiracy to sell accidental death and dismemberment policies to unsuspecting and unsophisticated bank clients;

(28)     Such policies were hawked by employees and/or representatives of Regions Bank who were not licensed life insurance agents pursuant to the laws of the State of Tennessee;

(29)     Regions Bank employees and/or representatives were pressured to sign up as many bank clients as possible, and were rewarded for the number of clients who accepted such policies;

(30)     As bank employees and/or representatives, these individuals were able to avoid the usual requirements of fiduciary duty that applies to insurance agents licensed with the State of Tennessee, and securities agents registered with the Securities and Exchange Commission (SEC), and/or other applicable state and/or federal compliance and oversight agencies;

(31)     Minnesota Life, and by extension its parent company, Securian, could not legally directly sell such policies to bank clients except through insurance agents licensed with the State of Tennessee, and/or through securities agents properly registered with the SEC, and/or other applicable state and/or federal compliance and oversight agencies;

(32)     The agreement between the defendants permitted Minnesota Life, and by extension its parent company Securian, access to an easily identifiable pool of potential clients to whom it would not have normally had easy access, and permitted the sale of insurance products without the need and cost of staffing an office with properly licensed representatives;

(33)     The agreement between the defendants permitted Regions Bank to receive income from kickbacks or rebates paid by Minnesota Life, and by extension its parent company, Securian, or another related organization, for each bank client the bank employees and/or representatives convinced to take out a policy;

(34)     As a result, the agreement(s) allowed all defendants to thwart the insurance and securities licensure and registration laws, and receive funds they were not entitled to receive as a result of their failure to be properly licensed.

## COUNT VII: FRAUD, PURSUANT TO TENNESSEE CONSUMER PROTECTION ACT, TENN. CODE ANN. § 47-18-101, et seq – MINNESOTA LIFE, SECURIAN, AND REGIONS BANK

(35)     The sale of insurance policies constitutes a "trade," "commerce," or "consumer transaction," as defined by Tenn. Code Ann. § 48-18-103 (19);

(36)     Neither Minnesota Life, and by extension its parent company, Securian, nor Regions Bank, nor the employees or representatives of any of these entities, made any effort to correctly represent to Ms. Reasonover, or draw her attention to the fact that, she would be paying premiums for a fifty-thousand dollar ($50,000) policy, but only receiving the benefit of a twenty-five thousand dollar ($25,000) policy, thereby willfully and knowingly misrepresenting to Ms. Reasonover the value of the policy she was purchasing, and defrauding her of premium payments in excess of what would have been necessary to purchase an age-based AD&D policy;

(37)     In fact, the difference in the age-reduced death benefit of twenty-five thousand dollars ($25,000), versus the purported death benefit of fifty-thousand dollars ($50,000), was hidden in arcane and confusing language, and small, inconspicuous print in the paperwork Ms. Reasonover received **after** the policy premiums began to be deducted from her Regions account, and no employee or representative of either Regions Bank, Minnesota Life, and by extension its parent company, Securian, made any effort to explain the meaning, and/or ensure her understanding thereof;

(38)     Minnesota Life, and by extension its parent company, Securian, nor Regions Bank, the employees and representatives of these entities, willfully and knowingly failed to revealed to Ms. Reasonover any benefit or pay back received, or anticipated, by Regions Bank from Minnesota Life, and/or Securian, for selling Ms. Reasonover a nonparticipating AD&D policy;

(39)     Ms. Reasonover reasonably relied upon the misrepresentations of Regions Bank, its employees and/or representatives, believing that an insurance product a bank representative and/or employee would offer her was appropriate for her age and financial condition—of which they were, or should have been, aware—and reasonably relying on the due diligence of Regions Bank to offer products only from reputable providers, which products were what they purported to be;

(40)     Ms. Reasonover was sold a policy that did not meet her needs, was inappropriate for her age and financial condition, and which, in fact, failed to meet her needs; and;

(41)     As is the case with most people who purchase such AD&D policies, Ms. Reasonover purchased the instant AD&D policy because she could neither qualify for, nor afford, a standard life insurance policy, and the instant policy was knowingly and willfully misrepresented as an inexpensive alternative, allowing Ms. Reasonover to avoid the need for underwriting, and at better rates than a fifty-thousand dollar ($50,000), guaranteed issue life insurance policy;

(42)     Few, if any, of the claims made under such AD&D policies are ever paid, and this is a fact on which Minnesota Life, and by extension its parent company, Securian, relies, given that a very small percentage of deaths are the result of an accident that would qualify for payment of benefits under these plans.

WHEREFORE, Plaintiff demands that:

(a)     Process issue and be served upon Defendants, requiring Defendants to answer Plaintiff's Complaint, as well as any discovery, within the time prescribed by law;

(b)     Plaintiff be awarded a judgement against Defendant for all amounts due under the policy, not to exceed fifty thousand dollars ($50,000);

(c)     Plaintiff be awarded a full return of all premiums paid by Ms. Reasonover;

(d)     Plaintiff be awarded an additional twenty-five percent (25%), pursuant to *Tenn. Code Ann.* § 56-7-105;

(e)     Plaintiff be awarded treble damages pursuant to *Tenn. Code Ann.* § 47-18-109(a)(3);

(f)     Plaintiff be awarded pre-judgment interest of such judgment;

(g)     Plaintiff be awarded all costs of this suit, including, but not limited to court costs and attorney's fees;

(h)     A jury of twelve persons by empaneled to determine all issues triable by jury;

(i)     And any other relief which this Court may find just and applicable.

Respectfully submitted,

TIDWELL, IZELL & RICHARDSON

W. GERALD TIDWELL, JR., BPR #10306
W. ADAM IZELL, BPR#28438
TODD A. DAVIS, BPR#32061
736 Market Street, Suite 1550
Chattanooga, TN 37402
Phone: (423)602-7511
Fax: (423)602-7515
*Attorneys for Plaintiff*

STATE OF TENNESSEE:
COUNTY OF HAMILTON:

     Plaintiff, first being duly sworn according to law, makes oath that the statements contained in the foregoing Complaint are true to the best of her knowledge, information and belief and in sincerity and truth and that the Complaint is not made out of levity or by collusion with the Defendants, but in sincerity and truth for the causes mentioned, and that none of the Defendants are a member of the armed forces of the United States.

Schawna R. Tanner

Schawna R. Tanner

Sworn to and subscribed before me this the *16th* day of December, 2016.

NOTARY PUBLIC

My Commission Expires: *May 7, 2017*

## IN THE CHANCERY COURT FOR HAMILTON COUNTY, TN

| | | |
|---|---|---|
| ESTATE OF ROSE MARIE REASONOVER | * | |
| SCHAWNA TANNER, Executrix, | * | Docket Number: le-0866 |
| Plaintiff | * | |
| | * | Division: _____ |
| Vs. | * | |
| | * | |
| MINNESOTA LIFE INSURANCE COMPANY, | * | |
| SECURIAN FINANCIAL NETWORK, INC. | * | |
| AND REGIONS BANK | * | |
| Defendants | * | |

### PLAINTIFF, SCHAWNA TANNER'S, FIRST SET OF INTERROGATORIES TO DEFENDANT, MINNESOTA LIFE INSURANCE COMPANY

Please take notice that the Plaintiff, Schawna Tanner, hereby serves the following Interrogatories on the Defendant, Minnesota Life, pursuant to Rule 33 of the *Tennessee Rules of Civil Procedure*. The said Interrogatories are to be answered under oath by the Plaintiff within thirty (30) days of service hereof, sworn answers to be served upon Counsel for Plaintiff, W. Gerald Tidwell, Jr., 736 Market Street, Suite 736, Chattanooga, TN 37402.

Further, please take notice that these Interrogatories are continuing in nature and that any information acquired after your answers have been filed and served upon adversary counsel should, as soon as possible after its acquisition, be supplied to adversary counsel by way of written supplemental answers to these interrogatories.

Further, please take notice that the information sought in these Interrogatories should be supplied whether the same is within the knowledge or in the control of the Plaintiff or within the knowledge or in the control of Plaintiff's counsel.

Case 1:17-cv-00038-CLC-CHS   Document 1-1   Filed 02/08/17   Page 19 of 42   PageID #: 24



## DEFINITIONS AND INSTRUCTIONS

For the purposes of these Interrogatories, the following instructions and definitions shall apply:

1.     The term "Document" as used herein includes any matter or tangible thing containing any handwriting, typewriting, printing, or any other means of recording upon any tangible thing, any form of communication, including any oral communications, later reduced to writing, or confirmed by, a writing.

2.     In all instances, the terms, "Identify" and "Identity," when used in connection with a Document, meant to state a description of a Document, identifying the Document with a degree of particularity that you would require for a notice to produce documents or subpoena *duces tecum*. Such identification, when used herein in connection with a Document, also means to state:

    a.     The nature of the Document, e.g., letter, memorandum, contract, report, fax, email, etc.;

    b.     Its title, if any;

    c.     The date that Document was prepared;

    d.     The Identity of the person who prepared such Document, or participant in its preparation in any way or who signed it;

    e.     A brief summary or description of its contents;

    f.     The Identity of the person who has custody or control of the writing, or a cop of it; and

    g.     The present location of the Document.

Estate of Reasonover, *et al* v. Minnesota Life, *et al*                                    Page **2** of **16**
Plaintiff's First Set of Interrogatories to Minnesota Life

Case 1:17-cv-00038-CLC-CHS   Document 1-1   Filed 02/08/17   Page 20 of 42   PageID #: 25

3. The term "Person," as used herein, includes in the plural, as well as in the singular, any individual, firm, corporation, partnership, association, and any other kind of business or legal entity.

4. In all instances, the terms "Identify" and "Identity," when used herein, in connect with a Person, mean to state:

    a. The full name of the Person;

    b. His or her last known business address and phone number;

    c. His or her last known employer; and

    d. His or her last known residence address and phone number.

5. The term "Plaintiff," as used herein, refers to the Estate of Rose Marie Reasonover, and Executrix, Schawna Tanner, or any person acting as her agent or other on her behalf.

6. The term "Defendant," as used herein, refers to Minnesota Life Insurance Company referred to in Interrogatory questions as "Minnesota Life."

7. The term "Regions Bank" or "the Bank" as used herein refers to "Regions Bank."

8. The term "Securian" refers to Securian Financial Network, Inc., the parent company of Minnesota Life Insurance Company.

9. The term "AD&D" refers Accidental Death and Dismemberment policies provided by Minnesota Life Insurance Company and offered to Regions Bank clients.

10. The term "SEC" refers to the federal Securities and Exchange Commission.

11. Pursuant to Rule 33 of the *Tennessee Rules of Civil Procedure,* you shall answer each of the following Interrogatories under oath, in writing, separately, in the fullest detail possible, and in accordance with these instructions, and with the definitions set forth above. The

answers shall be signed by the person making them, and a copy of the answers, together with your objections, if any, shall be served to Defendant's counsel in the time period prescribed by law.

12.    In order to simplify the issues and resolve as many matters of fact as possible before trial, Plaintiff further requests that, if any of these Interrogatories, or portions thereof, cannot be answered fully, such shall be answered to the extent possible with reasons for not answering more fully plainly set forth.

If you lack the information necessary to answer any of the Interrogatories, please describe the specific efforts made by you, or anyone on your behalf, to ascertain the information, and state as definitely as possible when you anticipate obtaining the information and supplementing your response(s).

In responding to the below listed Interrogatories, please indicate, as to each specific answer, the source(s) of the information upon which you relied in setting out such answer. If such information was obtained in whole, or in part, from a document, please identify such document, and state the name of its current custodian. If the information was obtained in whole, or in part, from an individual, please set forth the name, title, business and home address, and all known telephone number of the individual concerned.

In answering these Interrogatories, please review all pertinent writing, drawing, photographs, documents, communication, printed materials, and/or investigations, and make such inquiry of your agents, or any other individuals, who have acted on your behalf in any manner concerning these events and/or happenings alleged on your behalf in the *Complaint*,

including your attorney(s), in this action, as will enable you to make true and complete answers to each of these Interrogatories.

If you, or your attorneys, claim **privilege** with regard to any information relative to a question, state as to each question in connection with which a privilege is claimed:

    a.    The precise nature of the privilege claimed;

    b.    The reason for claiming the privilege;

    c.    If the claim or privilege related to documents or objects, please identify each document or object by general title or description, date of creation or acquisition, and author or creator; and

    d.    If the claim or privilege relates to information obtained from a person, please identify fully the person, including, without limitations: full names, home addresses and phone numbers, and business addresses and phone numbers.

Failure to provide timely and proper answers may result in sanctions against the parties and/or counsel under Rules 26 and 37 of the *Tennessee Rules of Civil Procedure*.

13.    These Interrogatories are continuing in nature. Accordingly, you are under a duty pursuant to the *Tennessee Rules of Civil Procedure* to supplement your responses with respect to any Interrogatory that direct address: (a) the identity and location of persons having knowledge of discoverable matters, and (b) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he/she is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion. Additionally, you are under a duty to amend a prior response if you obtain information on the basis of which you know the response was incorrect when made, or that the

response, though correct made, is no longer true or accurate, and the circumstances are such that a failure to amend the response in substance, constitutes a knowing concealment.

## INTERROGATORIES

1) Provide a list of all State regulatory and/or oversight agencies with which Minnesota Life is registered, and all corresponding registration numbers.

   **RESPONSE:**

2) Provide a list of all Federal regulatory and/or oversight agencies with which Minnesota Life is registered, and all corresponding registration numbers.

   **RESPONSE:**

3) Provide a breakdown of the number of each type of policy or product offered by Minnesota Life that is currently in force, i.e., the number of in force life insurance policies—including how many of these are term life, whole life, variable universal life, etc.; the number of in force long term care policies; the number of in force disability policies; the number of in force annuities, etc.

   **RESPONSE:**

4) Of the number of insureds who hold Minnesota Life AD&D policies, how many have submitted claims under such policy in the last ten (10) years?

   **RESPONSE:**

5) Of the claims submitted under such AD&D policies in the last ten (10) years, how many of these claims have been paid?

**RESPONSE:**

6) Of the claims paid under such AD&D policies in the last ten (10) years, on average how many times were such claims denied before being paid?

**RESPONSE:**

7) Of the claims that have been denied in the last ten (10) yeas, what is the primary reason given for such denial?

**RESPONSE:**

8) Nationally, in the most recent year for which such information is available, how many people die in accidents that would qualify for payment of benefits under a Minnesota Life AD&D policy such as that held by Ms. Reasonover?

**RESPONSE:**

9) Industry-wide, how many claims under AD&D policies, such as the one held by Ms. Reasonover, are paid?

**RESPONSE:**

10)     How many times, in the last ten (10) years, has Minnesota Life been sued for failure to pay claims pursuant to an AD&D policy?

   **RESPONSE:**

11)     Identify each case in which Minnesota Life was sued for refusal to pay claims pursuant to an AD&D policy, during the last ten (10) years, including, but not limited to: name of plaintiff, the state and court in which the action was initiated, the corresponding case number amount claimed, outcome of the suit, i.e., settled, jury award, appealed, etc.

   **RESPONSE:**

12)     How many times in the last ten (10) years has Minnesota Life defended a class action suit for any reason associated with the marketing and sales of policies, of any kind, through financial institutions?

   **RESPONSE:**

13)     When did Minnesota Life begin offering AD&D policies?

   **RESPONSE:**

14)     When did Minnesota Life begin offering AD&D policies through banks and similar institutions?

   **RESPONSE:**

Estate of Reasonover, *et al* v. Minnesota Life, *et al*                                     Page 8 of 16
Plaintiff's First Set of Interrogatories to Minnesota Life

Case 1:17-cv-00038-CLC-CHS   Document 1-1   Filed 02/08/17   Page 26 of 42   PageID #: 31

15) Provide a list of every bank or financial institution, i.e., credit union, savings and loan, etc., through which Minnesota Life's AD&D policies are marketed, including the date when Minnesota Life began marketing such policy to that institution's clients.

   **RESPONSE:**

16) Provide a list of all lines offered by Minnesota Life through financial institutions, i.e. AD&D term life, whole life, etc.

   **RESPONSE:**

17) How many Tennessee state-licensed insurance agents does Minnesota Life currently employ, or maintain as 1099 contractors, in the State of Tennessee?

   **RESPONSE:**

18) How many SEC-registered agents does Minnesota Life currently employ, or maintain as 1099 contractors, in the State of Tennessee?

   **RESPONSE:**

19) Must a person have a checking or savings account through a financial institution to purchase a Minnesota Life AD&D policy, like the one held by Ms. Reasonover?

   **RESPONSE:**

20) Explain, in detail, the process by which financial institution clients are offered Minnesota Life insurance policies, of any kind.

RESPONSE:


21) Explain, in detail, the efforts made by Minnesota Life, its employees or representatives, to apprise Ms. Reasonover of the reduced death benefit under the AD&D policy she purchased through Regions Bank.

RESPONSE:


22) Explain, in detail, the efforts made by Minnesota Life, its employees or representatives, to apprise any client who purchases an AD&D policy through a financial institution of the manner in which the death benefit under the policy is reduced based on age.

RESPONSE:


23) Explain, in detail, any benefit or reward—actual or perceived—Regions Bank, or a Regions Bank employee, board member, or officer might anticipate for having offered or sold a Minnesota Life AD&D policy to a Bank client.

RESPONSE:


24) Explain in detail the nature of any relationship—contractual or otherwise—between Regions Bank and Minnesota Life. Please attach copies of any documents relied upon in providing such explanation.

RESPONSE:

25) Provide the date on which such relationship began.

**RESPONSE:**

26) Provide the date on which such relationship was terminated.

**RESPONSE:**

27) If such relationship has been terminated, provide a full description of the event(s) that lead to such termination, including, but not limited to which of the parties terminated the relationship, and the reason(s) for such termination.

**RESPONSE:**

28) Explain, in detail, the nature of any relationship—contractual or otherwise—between Minnesota Life and Securian Financial Network, Inc. Please attach copies of any documents relied upon in providing such explanation.

**RESPONSE:**

29) Explain, in detail, any remuneration or benefit Regions Bank receives from Minnesota Life as a result of successfully signing up a Bank client for insurance coverage.

**RESPONSE:**

30) If it is asserted that Regions Bank does not receive any benefit or remuneration from Minnesota Life as a result of successfully signing up Bank clients for insurance coverage through Minnesota Life, explain in detail the reason for the relationship between Regions Bank and Minnesota Life.

**RESPONSE:**

31) Explain, in detail, any remuneration or benefit Regions Bank receives from Securian as a result of successfully signing up a Bank client for insurance coverage.

**RESPONSE:**

32) If it is asserted that Regions Bank does not receive any benefit or remuneration from Securian as a result of successfully signing up Bank clients for insurance coverage through Minnesota Life, explain in detail the reason for the relationship between Regions Bank and Minnesota Life.

**RESPONSE:**

33) Explain, in detail, the nature of Regions Bank's position as "plan sponsor" of the AD&D policy sold to Ms. Reasonover. Specifically, identify and explain any, and all, responsibilities, benefits, or obligations—whether actual or implied—to Ms. Reasonover, Minnesota Life, Securian, or Regions Bank, as a result of being a "plan sponsor."

**RESPONSE:**

34) Explain, in detail, the nature of the relationship between Minnesota Life and "Financial Services Association," listed as the "policyholder" on the specimen copy of the AD&D policyholder sold to Ms. Reasonover.

RESPONSE:

35) Provide any corporate or individual contact information available regarding the AD&D policyholder, Financial Services Association, including, but not limited to: the corporation's physical and/or mailing address, phone numbers, the name(s) of members of the board of directors or officers, etc.

RESPONSE:

36) Explain, in detail, the relationship—contractual or otherwise—between Minnesota Life and Financial Services Association.

RESPONSE:

37) Provide a list, including name, address, and phone number, of each member of the Minnesota Life's Board of Directors for the last five (5) years.

RESPONSE:

38)     Provide a list of all members of Minnesota Life's Board of Directors who has ever held
        stock in Minnesota Life, Securian, or Financial Services Association, while simultaneously
        holding shares in Regions Bank.

        **RESPONSE:**

39)     For each member of Minnesota Life's Board of Directors who has held stock in Minnesota
        Life, Securian, or Financial Services Association, while simultaneously holding shares in
        Regions Bank, provide the name of the shareholder, the number of shares held in each
        entity, and the class of shares, i.e., A, B, C, common, preferred, etc.

        **RESPONSE:**

40)     Provide a list of all Minnesota Life officers who have ever held stock in Minnesota Life,
        Securian, or Financial Services Association, while simultaneously holding shares in
        Regions Bank, including any and all positions now or previously held at Minnesota Life or
        Securian, i.e., CFO, VP, CEO, COO, etc., and the dates such positions were held.

        **RESPONSE:**

41)     For each officer of Minnesota Life who has held stock in Minnesota Life, Securian, or
        Financial Services Association, while simultaneously holding shares in Regions Bank,
        provide the name of the shareholder, the number of shares held in each entity, and the
        class of shares, i.e., A, B, C, common, preferred, etc.

        **RESPONSE:**

FURTHER THIS AFFIANT SAITH NOT.


_____
Name of Respondent

_____
Respondent's Title

STATE OF _____
COUNTY OF _____

     Before me, the undersigned authority, personally appeared_____,
who, after first being duly sworn makes oath that the foregoing answers to Interrogatories are
true and correct, to the best of his/her information, knowledge, and belief.

     IN WITNESS, whereof I have set my hand and Notarial Seal, this _____ day of
_____, 20___.


_____
NOTARY PUBLIC
My commission expires: _____

**TIDWELL, IZELL & RICHARDSON**

W. Gerald Tidwell, Jr., BPR No. 10306
736 Market Street, Suite 1550
Chattanooga, TN 37402
Phone: 423-602-7511
Fax: 423-602-7515

## CERTIFICATE OF SERVICE

I, W. Gerald Tidwell, do hereby certify that on this 29th day of Dec. 2016 a true and correct copy of the foregoing was served by placing same in US Mail, with postage prepaid, in amount sufficient to carry it to the addressee(s) as follows:

> Securian Financial Network, Inc.
> Minnesota Life Insurance Company
> c/o Julie Mix Peak
> Commissioner
> State of Tennessee
> Department of Commerce & Insurance
> 500 James Robertson Parkway
> Nashville, TN 37243-0565

ESTATE OF ROSE MARIE REASONOVER      \*
SCHAWNA TANNER, Executrix,      \*
**Plaintiff**      \*

Docket Number: _____

     \*
Vs.      \*

Division: _____

     \*
MINNESOTA LIFE INSURANCE COMPANY,      \*
SECURIAN FINANCIAL NETWORK, INC.      \*
AND REGIONS BANK      \*
**Defendants**      \*

## PLAINTIFF, SCHAWNA TANNER'S, FIRST SET OF ADMISSIONS TO DEFENDANT, MINNESOTA LIFE INSURANCE COMPANY

Please take notice that the Plaintiff, Schawna Tanner, hereby serves the following Requests for Admissions on the Defendant, Minnesota Life, pursuant to Rule 36 of the *Tennessee Rules of Civil Procedure*. The answered Admissions are to be served upon Counsel for Plaintiff, W. Gerald Tidwell, Jr., 736 Market Street, Suite 1550, Chattanooga, TN 37402.

### DEFINITIONS AND INSTRUCTIONS

For the purposes of these Admissions, the following instructions and definitions shall apply:

1.     The term "AD&D" as used herein refers to Accidental Death & Disability insurance policies as provided by Minnesota Life.

2.     The term "policy" or "policies" as used herein refers to Accidental Death & Disability insurance policies as provided by Minnesota Life.

3.     The term "Regions Bank" or "the Bank" as used herein refers to "Regions Bank."

Estate of Reasonover, *et al* v. Minnesota Life, *et al*
Plaintiff's First Set of Requests for Admissions to Minnesota Life

Page 1 of 7

4.    Pursuant to the *Tennessee Rules of Civil Procedure,* response to Requests for Admissions is required 30 days after service, but a defendant is not required to serve such answers or objections before the expiration of 45 days after service of the summons and complaint upon defendant. A denial shall fairly meet the substance of the requested Admission. An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that he/she has made a reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny. A party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the request. If objection is made, the reasons therefor shall be stated. The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter.

## ADMISSIONS

1)    Admit that Minnesota Life has routinely brokered, sold, and/or marketed AD&D policies to people who, at the time of initiation of the policy, are beyond the age that would permit their beneficiary to receive the full face value of the policy.

    **RESPONSE:**


2)    Admit that Minnesota Life makes no substantive effort to apprise holders of AD&D policies that the benefit under the policy is reduced when the insured reaches a particular age.

    **RESPONSE:**

Estate of Reasonover, *et al* v. Minnesota Life, *et al*
Plaintiff's First Set of Requests for Admissions to Minnesota Life

Page **2** of **7**

3) Admit that Minnesota Life has settled suits related to AD&D policies sold to individuals that, at the time of the initiation of the policy, are beyond the age that would permit a full payout of the face value of the policy, yet charging premiums reflective of the full face value of the policy.

RESPONSE:

4) Admit that Minnesota Life works with banks and similar vendors to market AD&D policies to unsophisticated people, who do not fully understand the terms of these policies.

RESPONSE:

5) Admit that Minnesota Life routinely sells AD&D policies to elderly individuals who purchase such policies as a substitute for life insurance.

RESPONSE:

6) Admit that Minnesota Life makes no attempt to ascertain whether or not people who purchase their AD&D policies through banks or other vendors understand the limitations of the policy.

RESPONSE:

7) Admit that Minnesota Life pays banks and other vendors a kickback or provides other remuneration, including non-monetary remuneration, for AD&D policies sold to that vendor's clients.

RESPONSE:

8) Admit that Minnesota Life paid Regions Bank some form of remuneration, including non-monetary, for having successfully sold an AD&D policy to Ms. Reasonover.

RESPONSE:

Estate of Reasonover, *et al* v. Minnesota Life, *et al*
Plaintiff's First Set of Requests for Admissions to Minnesota Life

Page 3 of 7

Case 1:17-cv-00038-CLC-CHS   Document 1-1   Filed 02/08/17   Page 37 of 42   PageID #: 42

9) Admit that it is Minnesota Life's policy to automatically deny claims made under AD&D policies, such as the policy held by Ms. Reasonover.

**RESPONSE:**

10) Admit that it is Minnesota Life's policy to pay benefits under AD&D policies, such as the one held by Ms. Reasonover, only after the beneficiary makes repeated claims under the policy.

**RESPONSE:**

11) Admit that there is no valid reason for having refused to pay the claim made by Ms. Tanner, pursuant to Ms. Reasonover's AD&D policy with Minnesota Life.

**RESPONSE:**

12) Admit that Minnesota Life rarely pays out benefits under AD&D policies like the one held by Ms. Reasonover.

**RESPONSE:**

13) Admit that TN law creates a rebuttable presumption against suicide in a suit for benefits under an insurance policy.

**RESPONSE:**

14) Admit that the policy language "intentional taking of poisons, gases, fumes, or other substances taken, absorbed, or injected," excludes prescription medications a person may take pursuant to, and in accordance with, directions from their physician and/or pharmacist.

**RESPONSE:**

Estate of Reasonover, *et al* v. Minnesota Life, *et al*
Plaintiff's First Set of Requests for Admissions to Minnesota Life

Page **4** of **7**

15) Admit that the language of Minnesota Life's AD&D policies, such as the one held by Ms. Reasonover, is intentionally narrow so as to ensure the ability of Minnesota Life to summarily deny claims.

RESPONSE:

16) Admit that the language of Minnesota Life's AD&D policies, such as the one held by Ms. Reasonover, is intentionally vague so as to ensure the ability of Minnesota Life to summarily deny claims.

RESPONSE:

17) Admit that, although a person may take prescription medications pursuant to, and in accordance with, the directions of their physician and/or pharmacist, this does not preclude death as a result of having taken such prescription medications.

RESPONSE:

18) Admit that prescription medications taken pursuant to the directions of a patient's physician and/or pharmacist can cause death, and that such death would be "accidental."

RESPONSE:

19) Admit that Minnesota Life AD&D policies, such as the one held by Ms. Reasonover, theoretically, are designed to pay benefits where someone dies as a result of taking prescription medications pursuant to, and in accordance with, the directions of their physician and/or pharmacist.

RESPONSE:

20) Admit that Minnesota Life never intended to pay out any benefits under the AD&D policy purchased by Ms. Reasonover.

RESPONSE:

Estate of Reasonover, *et al* v. Minnesota Life, *et al*
Plaintiff's First Set of Requests for Admissions to Minnesota Life

Page 5 of 7

Case 1:17-cv-00038-CLC-CHS   Document 1-1   Filed 02/08/17   Page 39 of 42   PageID #: 44

21) Admit that it is possible for an individual to take prescription medication as directed by their physician or pharmacist and have elevated levels of those medications in their system.

RESPONSE:

22) Admit that elevated levels of prescription medication, when found in a deceased's blood, are not always the cause of death.

RESPONSE:

23) Admit that a valid medical purpose of the prescription medication oxycodone may be profound sedation.

RESPONSE:

24) Admit that prescription medications are taken intentionally when taken pursuant to the directions of one's physician and/or pharmacist.

RESPONSE:

Estate of Reasonover, *et al* v. Minnesota Life, *et al*
Plaintiff's First Set of Requests for Admissions to Minnesota Life

Page 6 of 7

Case 1:17-cv-00038-CLC-CHS   Document 1-1   Filed 02/08/17   Page 40 of 42   PageID #: 45

RESPECTFULLY SUBMITTED,

**W. Gerald Tidwell, Jr., BPR No. 10306**
736 Market Street, Suite 1550
Chattanooga, TN 3402
Phone: 423-602-7511
Fax: 423-602-7515

## CERTIFICATE OF SERVICE

I, W. Gerald Tidwell, do hereby certify that on this _29th_ day of _December_ 2016 a true and correct copy of the foregoing was served by placing same in US Mail, with postage prepaid, in amount sufficient to carry it to the addressee(s) as follows:

Securian Financial Network, Inc.
Minnesota Life Insurance Company
c/o Julie Mix Peak
Commissioner
State of Tennessee
Department of Commerce & Insurance
500 James Robertson Parkway
Nashville, TN 37243-0565

W. Gerald Tidwell, Jr.

Estate of Reasonover, *et al* v. Minnesota Life, *et al*
Plaintiff's First Set of Requests for Admissions to Minnesota Life

Page 7 of 7

Case 1:17-cv-00038-CLC-CHS   Document 1-1   Filed 02/08/17   Page 41 of 42   PageID #: 46




**CLERK & MASTER**
**CHANCERY COURT OF TENNESSEE**
**ELEVENTH JUDICIAL DISTRICT OF TENNESSEE**
**CHATTANOOGA, TENNESSEE**

## AMERICANS WITH DISABILITIES ACT NOTICE
42 U.S.C. 12131, et seq., T.C.A. § 16-3-803, Tennessee Supreme Court Rule 45

The AMERICANS WITH DISABILITIES ACT (ADA) prohibits discrimination against any qualified individual with a disability. The Tennessee Judicial Branch does not permit discrimination against any individual on the basis of physical or mental disability in accessing its judicial programs. In accordance with the ADA, the Tennessee Judicial Branch will provide reasonable modifications, if necessary, in order for any qualified individual with a disability to access all of its programs, services and activities.

**If you require a modification to access the judicial program or have special needs because of a qualified disability, you must** submit a **written** REQUEST FOR MODIFICATION to the Local Judicial Program ADA Coordinator listed below at least **five business days prior** to the date for which the modification is sought.

For ADA information or assistance **ONLY**, contact:

**Local Judicial Program ADA Coordinator**
**Vince Dean, Criminal Court Clerk**
**102 Courts Building**
**600 Market Street**
**Chattanooga, TN 37402**
**(423) 209-7500**
**VinceD@HamiltonTN.gov**

THE TENNESSEE JUDICIAL BRANCH AMERICANS WITH DISABILITIES ACT POLICY REGARDING ACCESS TO JUDICIAL PROGRAMS, as well as REQUEST FOR MODIFICATION form may be found online at: www.tncourts.gov